**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **JEFFERY SCOTT STINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:08-CV-955-VEH** |
| | ) | |
| **CITY OF CENTRE, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**MEMORANDUM OPINION AND ORDER**

## I.   INTRODUCTION

On October 28, 2009, the jury returned a verdict in Plaintiff's favor on his gender discrimination claim. (Doc. 45 ¶ 2). The jury awarded Plaintiff $120,000.00 in back pay and $65,000.00 in emotional pain and mental anguish damages. (*Id.* ¶¶ 3, 4).

Subsequent to the post-trial status conference held on January 15, 2010, the court entered an order identifying the "issues that remain to be decided by the court, to the extent that the parties cannot agree" before judgment can be entered. (Doc. 52 at 1). That list included:

> 1.   The amount of additional back pay to be awarded to plaintiff from the date of the verdict (October 28, 2009) until the date the court enters judgment;

2.      Whether the jury's damages award to the plaintiff for emotional pain and mental anguish is due to be remitted, and, if so, by what amount;

3.      The amount of prejudgment interest on any back pay award and the interest rate(s) applicable to such determination;

4.      The legal rate of interest that will accrue on the judgment;

5.      The amount of front pay to be awarded to plaintiff; and

6.      The amount of attorneys' fees and expenses to be awarded to plaintiff and his attorneys.

(Doc. 52 at 1-2).

In this order, the court required the parties to file a joint statement and established a briefing schedule on any issues from this list (with the exception of attorneys' fees and expenses) that they were unable to resolve.  (*Id.* at 2).  On January 22, 2010, the parties filed their joint statement.  (Doc. 53).

The parties also filed their briefs (Docs. 55-57), and their areas of disagreement are now under submission.  With the exception of a post-judgment interest rate chart and two schedules showing front pay calculations attached to Plaintiff's Memorandum on Un-Agreed [sic] Issues (Doc. 55 at Exs. 1, 2, 2-A), neither side has provided any evidentiary citations, offered any additional evidence for this court to consider, requested a trial transcript, or asked for an evidentiary hearing.

## II.   AGREED AREAS

### A.   Remitting Award for Emotional Pain and Mental Anguish Damages

The parties agree that the jury award to Plaintiff for emotional pain and mental anguish is due to be remitted from $65,000.00 to $50,000.00 due to the applicable statutory cap.  (Doc. 53 ¶ 2 (citing 42 U.S.C. § 1981a)).

### B.   Post-Judgment Interest

The parties agree that 28 U.S.C. § 1961 mandatorily applies to the post-judgment interest calculation.  (Doc. 53 ¶ 4).

## III.   UNRESOLVED AREAS

### A.   Interim Back Pay Calculation

Plaintiff contends that the appropriate interim back pay calculation for the time between verdict on October 28, 2009, and the court's final judgment order should be $3,333.33 monthly.  (Doc. 53 ¶ 1).  More specifically, Plaintiff recalls that the evidence at trial established that the position of receptionist denied to Plaintiff paid $30,000.00 annually or $2,500.00 monthly. (Doc. 55 at 2).  Plaintiff further indicates that the costs of medical insurance coverage was $10,000 annually or $833.00 monthly, for a total lost benefits of $3,333.33 monthly.  (*Id.*).  Plaintiff points to no record evidence substantiating these amounts.

3

While Defendant concedes that this "figure is not outrageous" (Doc. 53 ¶ 1), it raises several issues in an attempt to discount the monthly total, including the fact that the jury's award for back pay and benefits of $120,000.00 "was less than the plaintiff sought" at trial, which Defendant suggests reflects Plaintiff's failure to mitigate (Doc. 56 at 1, 2);[1] "some difference in the recollection of counsel as to the wage amount" (*Id.* at 2); and Defendant's contention "that the amount of benefits costs was not before the court or jury." (*Id.*). Defendant does not suggest an alternative interim back pay calculation or cite to evidence in support of its opposition.

"Successful Title VII claimants . . . are presumptively entitled to back pay."

---

[1] Of course, the reduction could also be attributable to the jury's consideration of interim earnings that Plaintiff made. For example, in 2007 and 2008, Plaintiff indicated that his gross earnings as an independent insurance agent ranged somewhere between $20,000.00 to $30,000.00.

Regardless, Defendant has wholly failed to support its affirmative defense regarding Plaintiff's purported failure to mitigate. Not only has Defendant failed to provide the court with any controlling authority as to the Eleventh Circuit's standard on mitigation in a Title VII case that addresses what it is obligated to prove, *see, e.g., Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991) (emphasis added) (footnotes omitted), *superseded by statute on other grounds as recognized in Sample v. Schuller Intern., Inc.*, 836 F. Supp. 876 (S.D. Ga. 1993), it also has neglected to provide the court with any evidentiary citations in support of its position. Accordingly, to the extent that Defendant has asserted a failure to mitigate defense with respect to any of the parties' remaining post-trial issues, that defense is rejected as unformulated legally and upon Defendant's failure to affirmatively prove anything.

*Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 794 (11th Cir.1999) (citation omitted). Also, "[c]ourts resolve uncertainties in back pay in favor of the discrimination victim." *Id.* (citation omitted).

However, Plaintiff bears the preliminary burden of substantiating the components of his back pay award, including any loss of compensation, interim back pay calculation, and/or loss of a particular fringe benefit. *See, e.g., Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995) ("Although back pay should generally include the value of lost fringe benefits, *see, e.g., Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1562 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S. Ct. 274, 93 L. Ed. 2d 250 (1986), the plaintiff bears the initial burden of establishing the value of the lost salary and benefits, *see Fleming v. County of Kane*, 898 F.2d 553, 560 (7th Cir.1990).") (emphasis added)); *Barbour*, 48 F.3d at 1278 ("The district court reasonably concluded that Barbour did not meet this burden, as the record contained no evidence explaining, for instance, why Rich received this car allowance, whether it was a regular part of Medlantic's executive compensation package, and whether Barbour would have received it.") (emphasis added). Relatedly, the court has no obligation to develop arguments for either side; instead, that is squarely the responsibility of the

5

parties. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments[.]") (citation omitted).

Here, Defendant does not dispute that Plaintiff is entitled to recover lost salary and lost insurance coverage as components of back pay; rather, Defendant challenges the amounts sought. The court recalls evidence establishing the position's annual salary to be $24,481.60 annually or $2,040.13 monthly (rather than $30,000.00 annually or 2,500.00 monthly).[2] Regarding proof of the costs of medical insurance, while the court remembers evidence substantiating that the receptionist position included medical insurance coverage, it recollects that Plaintiff obtained substitute medical coverage for only a limited period of time and, regardless, that the record does not substantiate the amount that he actually spent for that medical insurance.

The court also remembers testimony from Ms. Mary Lee Tucker about the amounts paid by Defendant on a monthly basis for an employee to have individual coverage: $388.00 in 2007; $410.00 in 2008; and $461.00 in 2009. However, in a previous ruling made in this case, the court made it clear what standard would apply when measuring lost medical coverage as a potential fringe benefit for Plaintiff:

Furthermore, having studied numerous cases relating to this issue

---

[2]   In particular, the court relies upon Plaintiff's Exhibit No. 7, which was admitted at trial and reflects an annual salary of $24,481.60 for Leah Bradley, the employee ultimately selected (instead of Plaintiff) for the position of receptionist.

and finding an indication that it is a settled practice to award lost insurance <u>benefits</u> (as opposed to employer-paid premiums) in calculating a back pay award in a wrongful termination case under the NLRA (similar to the practice of not deducting unemployment benefits as was the case in *Brown*), this court is persuaded to follow the group of decisions, including *Pearce*, that allows a plaintiff to seek as part of a back pay recovery (and relatedly introduce evidence of) "those expenses <u>actually incurred</u> by either replacement of the lost insurance <u>or</u> occurrence of the insured risk." *Id.*, 966 F.2d at 959 (emphasis added) (footnote omitted). The court believes this ruling to be more closely aligned with the make-whole nature of a back pay award because it turns upon the plaintiff's <u>actual</u> out-of-pocket exposure as a result of the employer's purported discriminatory action. *See, e.g., Cox*, 784 F.2d at 1562 ("The district court is instructed to consider these and other additions to straight salary (such as bonuses and interest, *see id.*) in fashioning back-pay awards that will more nearly make these plaintiffs whole.") (emphasis added) (citing *Pettway v. ACIPCO*, 494 F.2d 211, 263 (5th Cir. 1974)).

(Doc. 39 at 6-7 (footnotes omitted)).

Therefore, in accordance with this court's prior ruling, evidence of what an employer paid in premiums for an employee to have medical insurance coverage is insufficient proof. Instead, Plaintiff must offer evidence of <u>his out-of-pocket expenses related to his lost medical coverage</u>. In seeking a recovery of $10,000 annually or $833.00 monthly for lost medical coverage, Plaintiff has not even come close to meeting this standard. In particular, Plaintiff makes no effort to explain where these figures come from, and the court has not been able to independently verify their validity through its own review of the record. Relatedly, Plaintiff has not

substantiated that he has incurred any out-of-pocket medical expenses during the interim back pay period.

In sum, the court will not award any lost medical coverage to Plaintiff as a component of his interim back pay award due to a failure of proof.  The court will award Plaintiff interim back pay in the amount of $2,040.13 (for lost salary only) per month for the time period between the date of the verdict entered on October 28, 2009, and the date of the final judgment.[3]

## B.    Pre-Judgment Interest Rate

Plaintiff asks this court to apply the general Alabama interest rate of 6% as the pre-judgment interest rate.  (Doc. 55 at 7).  Defendant responds that the court should instead "use the IRS prime rates applicable to the time period in question."  (Doc. 56 at 2).

In *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507 (11th Cir. 1987), the Eleventh Circuit made it clear that the appropriate pre-judgment interest rate applicable in Title VII cases <u>is the IRS prime rate</u>:

> Second, we consider which interest rate should govern an award of prejudgment interest in a Title VII case. As this court has done on other occasions, we turn to the National Labor Relations Act (NLRA) for guidance. *See, e.g., Smith*, 796 F.2d at 1432; *Brown v. A.J. Gerrard*

---

[3]  Also, no concrete evidence of interim earnings by Plaintiff exists for this limited time period.

*Manufacturing Co.*, 715 F.2d 1549 (11th Cir.1983) (en banc) (per curiam). *Brown* determined that Congress intended to model Title VII remedies on those afforded by the NLRA. *Smith*, 796 F.2d at 1432. We note that there has been a consistent practice under the NLRA to award interest on back pay awards. *See, e.g., Winn-Dixie Stores, Inc. v. NLRB*, 413 F.2d 1008, 1010 (5th Cir.1969). In 1977, the National Labor Relations Board (NLRB) adopted the IRS prime rates and rejected the traditional flat six percent interest rate. *Florida Steel Corp.*, 231 NLRB No. 117, 96 L.R.R.M. 1070, *enforcement denied on other grounds, sub nom. NLRB v. Florida Steel Corp.*, 586 F.2d 436, 451 (5th Cir.1978). The NLRB adopted the prime rate because the flat percentage rate did not reflect economic reality. *Id.* Other district courts within this circuit have been persuaded by the NLRB's policy changes and have used the IRS prime rates to calculate the amount of prejudgment interest on back pay awards in Title VII cases. *See, e.g., Walters v. City of Atlanta*, 610 F. Supp. 715 (N.D. Ga. 1985), *aff'd in part, rev'd in part*, 803 F.2d 1135 (11th Cir.1986); *Davis v. Construction Materials, A Division of Ancar Enterprises, Inc.*, 558 F. Supp. 697, 699 (N.D. Ala. 1983). We find this approach to be the correct one. In the interest of uniformity, we vacate the district court's decision with respect to the rate of prejudgment interest. We direct the district court to calculate an award of interest based on the IRS prime rates that prevailed between 1977 and 1986.

*Guardian Pools*, 828 F.2d at 1512 (emphasis added); *see also McKelvy v. Metal Container Corp.*, 854 F.2d 448, 453 (11th Cir. 1988) ("This court recently decided that the interest rate for prejudgment interest on back pay awards under Title VII depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961. *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507 (11th Cir. 1987).") (footnote omitted).[4]

---

[4] While *McKelvy* arises under the ADEA, the Eleventh Circuit concluded that the same pre-judgment interest rate should apply not only to Title VII, but also in ADEA lawsuits. *Id.*, 854 F.2d at 453 ("We see no reason that the rate should differ under ADEA, and indeed the plaintiff has conceded that *Guardian Pools* controls.").

*Guardian Pools* is still binding precedent in the Eleventh Circuit for Title VII cases.  Accordingly, the appropriate pre-judgment interest rate to apply is the IRS prime rate(s) that prevailed during the relevant time period, *i.e.*, as measured from the effective date of the discriminatory decision through the entry of final judgment.

### C.   Front Pay

"Title VII claimants are also presumptively entitled to reinstatement under the 'make whole' policy."  *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir. 1985) (emphasis added) (citations omitted).  Here, the parties are in agreement that the Title VII presumptive remedy of reinstatement, or instatement, as more precisely labeled in the context of this lawsuit, is not possible due to the lack of any comparable open position for Plaintiff to fill.  (Doc. 53 ¶ 5).  Accordingly, the option of front pay must be considered.  *See, e.g., Tucker v. Housing Authority of Birmingham Dist.*, 507 F. Supp. 2d 1240, 1281 (N.D. Ala. 2006) ("This court agrees with other courts that have found reinstatement (or instatement, for that matter) inappropriate in situations where there is no vacancy in which to place the plaintiff or where an incumbent employee must be discharged to accomplish the reinstatement.") (citations omitted); *see also Weaver*, 922 F.2d 1515, 1528 ("In addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay.") (footnote omitted).

As the Supreme Court has explained front pay in the context of a Title VII

claim:

> <u>Courts recognized that reinstatement was not always a viable option, and that an award of front pay as a substitute for reinstatement in such cases was a necessary part of the "make whole" relief mandated by Congress and by this Court in *Albemarle*</u>.  *See, e.g., Shore v. Federal Express Corp.*, 777 F.2d 1155, 1158-1159 (C.A.6 1985) ("Front pay is . . . simply compensation for the post-judgment effects of past discrimination." It is awarded "to effectuate fully the 'make whole' purposes of Title VII"); *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1066 (C.A.8 1988) (stating that front pay was appropriate given substantial animosity between parties where "the parties' relationship was not likely to improve, and the nature of the business required a high degree of mutual trust and confidence"); *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d, at 957 (upholding award of front pay where continuing hostility existed between the parties); *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1347 (C.A.9 1987) (same). By 1991, virtually all of the courts of appeals had recognized that "front pay" was a remedy authorized under § 706(g).  In fact, no court of appeals appears to have ever held to the contrary.

*Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 850-51 (2001) (emphasis

added) (footnotes omitted).

As the Eleventh Circuit has discussed front pay under Title VII:

> <u>As an alternative to reinstatement, the court could have ordered front pay</u>.  *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358 (5th Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S. Ct. 767, 54 L. Ed. 2d 781 (1978).  *See also Thompson v. Sawyer*, 678 F.2d 257, 292 (D.C. Cir. 1982); *Fitzgerald v. Sirloin Stockade Inc.*, 624 F.2d 945 (10th Cir. 1980).  On remand, the court also should consider this option.  In doing so, the court must bear in mind that awards of front pay, like other relief under Title VII, must be fashioned in a manner to "further the goals of

ending illegal discrimination and rectifying the harm it causes."
*Thompson v. Sawyer*, 678 F.2d at 292.

*Nord*, 758 F.2d at 1473-74 (emphasis added) footnotes omitted).

In this case, the parties widely disagree on the amount of front pay to be awarded. (Doc. 53 ¶ 5). More specifically, Plaintiff suggests that he should receive a total of $631,619.76 for 15 years of front pay (Doc. 55 at 15); Defendant's response indicates that an appropriate amount ranges from zero[5] to something significantly less than that sought by Plaintiff. (Doc. 56 at 9 ("In conclusion, defendant avers that front pay is not called for; alternatively, that any front pay award is subject to be reduced for failure of mitigation; and finally that a 15-year award would be an abuse of discretion.")).

---

[5] The court has studied and rejects Defendant's argument that the line of controlling ADEA cases which apply an "egregious circumstances" standard to the front pay determination under that particular statute should apply equally to Title VII claims. (Doc. 56 at 3-5 (citations omitted)). Indeed, the ADEA and Title VII are not mirror images of each other. *See, e.g., Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343, 2348 (2009) ("Because Title VII is <u>materially different</u> with respect to the relevant burden of persuasion, however, these decisions do not control our construction of the ADEA.") (emphasis added). Further, in the absence of an Eleventh Circuit or Supreme Court decision expressly embracing an egregious conduct component to a Title VII front pay decision, this court declines to follow those district courts that have disallowed front pay in a Title VII case on the basis that no record of egregious actions on the part of an employer existed. *Accord Tucker*, 507 F. Supp. 2d at 1282-83 ("Given that this is a Title VII case, the court will apply the controlling precedent of the Eleventh Circuit in Title VII cases and will presume that <u>Plaintiff is 'presumptively entitled' to front pay without a required showing of 'egregious circumstances.</u>'") (emphasis added).

In the scheduling order, the court gave special instructions on how to deal with a disagreement over front pay:

> If an unagreed issue is front pay, the parties shall each set out their respective positions regarding the amount of front pay that should be awarded to plaintiff (with an explanation of how that amount was calculated), what elements are appropriately considered as part of a front pay award under the facts of this case (and the party's calculation of the dollar amount for each element claimed), and whether the court should receive additional evidence as to any or all of those elements.  Both parties shall provide pinpoint citation to authority in support of their respective positions.
>
> If the plaintiff relies on evidence received at trial to establish his right to a particular element of front pay, or to establish his calculation of the value the court should place on such element, the plaintiff shall pinpoint cite the court to the evidence relied upon.  If the defendant controverts plaintiff's evidence, the defendant shall state the extent of the defendant's disagreement and shall pinpoint cite to the court any evidence received at trial that defendant believes refutes plaintiff's evidence.  If either party seeks to have the court receive additional evidence, that party shall make a detailed proffer of such evidence and shall advise the court as to the manner in which he or it seeks to present such evidence (i.e., by stipulation of the parties, by affidavit, or by sworn testimony at a post-trial evidentiary hearing, assuming the court determines that such a hearing is appropriate).

(Doc. 52 at 2-3 (emphasis added)).

As pointed out above, neither side has offered any evidentiary citations regarding the testimony and documents introduced at trial that relate to the remaining post-trial issues, including front pay, or requested a post-trial evidentiary hearing. Instead, the lawyers unpersuasively base their positions upon their respective (and

significantly differing) recollections of what the evidence was at trial, and then call upon this court to fairly and equitably choose a side without the benefit of any references to the record or a copy of the trial transcript itself.

While a prevailing Title VII claimant such as Plaintiff is presumptively entitled to a front pay award, the court made it extremely clear that Plaintiff was required to support his claim with evidentiary citations (either from the trial proceedings or by offering additional proof) before the court would expect Defendant to refute that evidence. Because, despite this court's order, Plaintiff has wholly failed to support his front pay claim by citing to any specific evidence already in the record or alternatively asking the court to receive additional evidence through, *e.g.*, an affidavit or an evidentiary hearing,[6] an award of front pay in the unsupported and speculative amount $631,619.76 (or as alternatively proposed $600,038.77) for 15 years would

---

[6]   The mere attaching of exhibits to a brief showing suggested front pay calculations  is inadequate and, without more information, such as an accompanying affidavit establishing the source of (*i.e.*, Plaintiff, Plaintiff's counsel, a retained expert witness, etc.) and methodology behind the figures (*e.g.*, to what extent, if any, were taxes or compensation earned from any future full-time employment or earnings factored into the analysis and why), this court would be ill-advised to rely upon such data in fashioning an appropriate front pay award. Also, while counsel has attempted to give some explanation of the charts in Plaintiff's brief (*see, e.g.*, Doc. 55 at 11, 14), "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) (emphasis added); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (Eleventh Circuit adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

not be equitable under the circumstances.[7]  *See, e.g., Peyton v. DiMario*, 287 F.3d 1121, 1129 (D.C. Cir. 2002) ("The plaintiff bears the initial burden of providing the district court 'with the essential data necessary to calculate a reasonably certain front pay award.'" *Barbour*, 48 F.3d at 1279 (quoting *McKnight*, 973 F.2d at 1372).").

By way of example only, Plaintiff has not even established <u>through sworn testimony</u> that, had a comparable position been available for him, his intention would have been to remain working for Defendant for 15 years.  *See, e.g., Guardian Pools*, 828 F.2d at 1511 ("The magistrate credited [Plaintiff's] testimony that had she obtained the position she sought at Guardian, she would not have gone to New Jersey.").  Moreover, even if such testimony existed in the record, an entitlement to 15 years of front pay based solely upon that subjective evidence would be far from automatic.  *See, e.g., Peyton*, 287 F.3d at 1129 ("Neither the district court nor appellee cites any case which suggests that an employee's subjective intent to remain at a job until retirement, *by itself*, justifies an award of front pay for the rest of her career."); *see also   Davoll v. Webb*, 194 F.3d 1116, 1144 (10th Cir. 1999) ("<u>Numerous factors are relevant in assessing front pay</u> including work life

---

[7]  Regardless of who prepared them, even the most basic premises incorporated into the charts, such as Plaintiff's salary and costs for medical insurance, are not substantiated by the evidence developed at trial.  This is one of the primary reasons the court required Plaintiff to provide evidentiary citations, *i.e.*, to limit the level of guesswork involved in determining an appropriate front pay amount.

expectancy,[8] salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which a plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value.") (emphasis added) (citation omitted).

Additionally, even if Plaintiff had made an effort to support his front pay calculation with evidentiary citations as required by this court, the circumstances of this case still would not warrant a front pay award of the magnitude sought by him. In particular, evidence at trial establishing that Plaintiff, earlier in his career, voluntarily left Defendant's employment in 2001 to pursue self-employment on a full-time basis as an independent insurance agent with Aflac and did not return there until 2006 when he worked for Defendant on a part-time basis counters strongly against his projection that, if instatement had in fact been feasible, he would have unquestionably remained working for Defendant on a full-time basis for 15 years. Put differently, Plaintiff's prior approximate 5 year departure from Defendant's employment to pursue other opportunities seriously undermines the notion that Plaintiff would have continued working for Defendant until retirement, especially in

---

[8] For example, the court finds that Plaintiff has wholly failed to address, much less provide evidence of, the issue of his projected life expectancy.

the absence of any evidence explaining otherwise.

Moreover, Plaintiff has not cited to one case comparable to his situation (*i.e.*, voluntarily resigning from and then subsequently reapplying for employment with that same employer) in which a court has awarded front pay for 15 years. *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.* ("*Flanigan's I*"), 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument);[9] *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court). Relatedly, Plaintiff also has not offered any proof as to the average time for an employee to remain in a receptionist position with Defendant.

Here, while the court can reasonably and readily determine the <u>amount</u> of monthly front pay that Plaintiff is presumptively entitled to receive (and has sufficiently proven) (*i.e.*, $2,040.13, which is equal to the above calculated monthly interim back pay amount), Plaintiff has not developed the record adequately as to the <u>duration</u> of how long front pay should be calculated.  The absence of any evidence,

---

[9]    In *Flanigan's Enterprises, Inc. of Georgia v. Fulton County, Ga.* ("*Flanigan's II*"), 596 F.3d 1265, 1269 (11th Cir. 2010), the Eleventh Circuit addressed the First Amendment constitutionality of a subsequently passed ordinance after the court struck down the 1997 ordinance in *Flanigan's I.*

17

explaining why 15 years or some other time limitation is appropriate <u>in the context of relevant front pay factors</u>, would make <u>any</u> front pay award suspect, inequitable, and inappropriate.

In sum, selecting a front pay ending date, based upon the undeveloped record before it, would, <u>at best</u>, be a shot in the dark.  Accordingly, Plaintiff's front pay award is completely denied based upon a failure of proof.  *See, e.g., Davoll*, 194 F.3d at 1143 ("Although the cut-off date is within the district court's discretion, that determination 'must be based on '<u>more than mere guesswork</u>.'") (emphasis added) (citations omitted).

## IV.   CONCLUSION

The parties are **ORDERED** to submit to chambers via email, *i.e.*, hopkins_chambers@alnd.uscourts.gov, no later than April 19, 2010, a proposed stipulated form of judgment that incorporates the court's foregoing rulings on the parties' unresolved areas as well as their areas of agreement.  **Such stipulation is expressly allowed to be without prejudice to either parties' right to appeal the jury verdict or any legal issue determined by the court adversely to him or it and carried forward into that judgment.[10]  The court will then enter final judgment**

_____

[10] The court recommends that each party include a statement that the proposed final judgment order is without prejudice to his or its right to appeal.

**in this case on April 28, 2010.**

In submitting their proposed final judgment order to chambers, the parties <u>must suggest a total judgment amount agreed to by them</u>[11] and broken down into the following 3 categories:  (1) total lost wages of $132,240.78 (*i.e.*, jury back pay award of $120,000.00 + an interim back pay award of $12,240.78 (*i.e.*, 6 months × $2,040.13 for the time period of October 28, 2009, until April 28, 2010)); (2) a prejudgment interest calculation based on those wages and the applicable IRS prime rate(s) up to the date of entry of final judgment on April 28, 2010; and (3) $50,000.00 for emotional pain and suffering.

As for the reserved issue of attorney's fees and costs, Plaintiff is **ORDERED** to file his motion seeking them no later than April 20, 2010.  Further, the parties are **ORDERED** to have, no later than April 27, 2010, a face-to-face, good faith discussion and attempt to reach an agreement or reduce any areas of dispute regarding the fees and expenses sought by Plaintiff.

Further, no later than April 29, 2010, Plaintiff is **ORDERED** to file a notice with the court advising it whether the parties have been able to reach a complete or partial agreement as to attorney's fees and costs and, if so, setting forth the areas of

---

[11] Subject to each party's right to appeal the verdict and adverse rulings by the court.

agreement and disagreement.  If any disputed fee or costs issues remain, the court will enter a separate scheduling order on them.

**DONE** and **ORDERED** this the 7th day of April, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

20