# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JEFFERY SCOTT STINSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 4:08-CV-955-VEH |
| ) | |
| **CITY OF CENTRE, ALABAMA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

**I.    Plaintiff's Proposed Final Judgment Order**

On April 19, 2010, Plaintiff submitted a proposed final judgment order to the court via chambers email.[1]  In this submission, Plaintiff's counsel indicated that he had provided a copy of this draft to counsel for Defendant on Friday, April 16, 2010, and that he contacted opposing counsel's office on April 19, 2010, because he had not received any response to the draft.  After being told that defense counsel was in trial, Plaintiff's counsel emailed his proposal to the court explaining that, while it was not in a stipulated form, he was attempting to comply with the court's deadline. (Doc. 58 at 18).

---

[1] Plaintiff's proposed final judgment order is attached to this memorandum opinion and order as Attachment # 1.

On April 20, 2010, counsel for Defendant sent an email message indicating that while he still had not had an opportunity to verify the interest calculation, the proposed order looked fine. He further suggested that the court could proceed with using Plaintiff's proposal and that, if necessary, counsel would take corrective action later.

However, by email dated April 27, 2010, counsel for Defendant advised the court that "the final judgment order as previously submitted by plaintiff . . . is considered satisfactory by defendant."[2]

## II.    Plaintiff's Motion to Amend

On April 20, 2010, Plaintiff filed a Motion to Amend Findings and to Alter or Amend Order (the "Motion to Amend"). (Doc. 59). In the Motion to Amend, Plaintiff asks the court to reconsider two issues previously decided on April 7, 2010 (Doc. 58),[3] before entering final judgment: (1) the use of the IRS prime rate as the pre-judgment interest rate (Doc 59 at 1); and (2) a denial of front pay relief to Plaintiff (on the basis of a failure of proof). (Doc. 59 at 4).

As an initial matter, the court rejects the Motion to Amend on procedural

---

[2] This April 27, 2010, email is attached to this memorandum opinion and order as Attachment # 2.

[3] The court hereby incorporates by reference the entire contents of its memorandum opinion and order (Doc. 58) entered on April 7, 2010.

grounds. More specifically, while Rule 59(e) of the Federal Rules of Civil Procedure provides for a reconsideration mechanism, such a filing is appropriate only after judgment has been entered, which, in this instance, has not yet happened. *See* Fed. R. Civ. P. 59(e) ("**Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days <u>after the entry of the judgment</u>.") (emphasis by underlining added). Accordingly, Plaintiff's Motion to Amend is **DENIED** as premature.

Moreover, even assuming the validity of Plaintiff's Motion to Amend under Rule 59(e) grounds, Plaintiff has failed to set forth, much less to show, how he meets the applicable standard under that rule. For example, nowhere in the Motion to Amend does Plaintiff establish that the court has committed <u>clear</u> error, or introduce an intervening change in controlling law or new evidence for the court to consider. *See, e.g., Summit Medical Center of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003) (As a general rule, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.").

Instead, Plaintiff's Motion to Amend constitutes a mere rehashing of the issues already presented and decided by the court or alternatively improperly attempts "to

raise an argument that was previously available, but not pressed." *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998); (*see, e.g.*, Doc. 59 at 7 (raising for the first time on reconsideration that "the Court had judicial notice of Plaintiff's life expectancy (under the provisions of Sections 35-16-3 and 35-16-4 of the Code of Alabama of 1975 and 2009 Alabama Acts Appendix [published mortality tables]")).[4] Under such

---

[4] Regarding judicial notice, the Eleventh Circuit has explained:

A. Fed. R. Evid. 201-Judicial Notice

Fed. R. Evid. 201(b) provides:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

<u>In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite</u>. 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5104 at 485 (1977 & Supp.1994). <u>Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing</u>. *Id.* If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous. *Id.* at 256-57 (footnote omitted). Moreover, to deprive a party of the right to go to the jury with his evidence where the fact was not indisputable would violate the constitutional guarantee of trial by jury. *Id.* at 485. *Accord United States v. Aluminum Co. of America*, 148 F.2d 416, 446 (2d Cir.1945) (L. Hand, J.).

circumstances, Plaintiff has not met the discretionary standard applicable to Rule 59(e) reconsideration requests. Accordingly, Plaintiff's Motion to Amend is alternatively **DENIED** for this separate reason.

Additionally, Plaintiff's Motion to Amend is also alternatively **DENIED** on the merits. Turning to the pre-judgment interest issue first, none of the cases cited by Plaintiff in support of his position (*see, e.g.*, Doc. 59 at 2-3) involved Title VII. Moreover, despite Plaintiff's dissatisfaction with the holding of *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987) ("In the interest of uniformity, we vacate the district court's decision with respect to the rate of prejudgment interest. We direct the district court to calculate an award of interest based on the IRS prime rates that prevailed between 1977 and 1986."), <u>the opinion still stands as binding precedent on this court in Title VII cases</u>. Therefore, the court will not alter its prior decision to apply the IRS prime rate as the pre-judgment interest rate.

As for the court's discretionary front pay ruling, while it fully acknowledges

---

*U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (emphasis added). Here, not only did Plaintiff fail to even bring to the court's attention his desire to have this court take judicial notice of his life expectancy until after it had issued its post-verdict ruling on April 7, 2010, but also Plaintiff has not demonstrated that his life expectancy as calculated under Alabama statutory law is a fact that Defendant accepts and/or "only an unreasonable person would insist on disputing[.]" Therefore, without more, the court will not take judicial notice of Plaintiff's life expectancy as belatedly requested.

that such an award cannot be denied merely because the calculation would be speculative or imprecise, here the court's decision to deny front pay is premised upon much more than that, including, in particular, Plaintiff's failure to comply with this court's order which gave the parties explicit directions on how to address a dispute over front pay, <u>including providing evidentiary support on which a reasonable front pay calculation could be based</u>. Plaintiff did not comply with this prior order and still has not explained why this non-compliance does not matter.

More specifically, nowhere in Plaintiff's Motion to Amend does he point to a case in which a court abused its discretion in denying front pay due to the plaintiff's failure to comply with a post-verdict order relating to the claim nor does he explain, <u>with supporting case authority</u>, why he is under no obligation to comply simply because a presumption in favor of awarding front pay applies in Title VII cases. *Cf. Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009) (stating "[t]hat federal courts are accorded certain inherent powers is well-established" (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)) and upholding district court's discretionary decision to deny attorney's fees and costs to Fair Labor Standards Act prevailing plaintiff despite customary entitlement to such relief under the statute, due to the court's "inherent powers" and plaintiff's counsel's lack of any pre-lawsuit efforts to resolve

6

the case, *i.e.*, "no phone call; no email; no letter-to inform [the defendants and their counsel] of Plaintiff's impending claim much less to resolve this dispute before filing suit.").

Similar to *Sahyers*, Plaintiff's lack of effort in adhering to this court's prior scheduling order governing front pay (and other post-verdict issues) and/or lack of any explanation, supported with case authority, why compliance with the order was unnecessary, provides this court with sufficient discretionary grounds for denying the claim in light of its "inherent powers" "'to manage their own affairs to achieve the orderly and expeditious disposition of cases.'" *See Sahyers*, 560 F.3d at 1244 (citation omitted). For example, Plaintiff contends in his Motion to Amend that "[t]he meaning of equitable relief where there is a presumption in favor of a party, and there is no rebuttal of the presumption, should be that the Court exercise its equitable and discretionary powers to grant a Plaintiff at least some relief – not deny it altogether." (Doc. 59 at 9). If this contention were true, then perhaps Plaintiff would not need to reasonably support his front pay award with record evidence.

However, Plaintiff cites no authority for this proposition, much less any binding precedent. Additionally, this court is not aware of any controlling precedent which indicates that such an arbitrary and capricious approach to awarding front pay is acceptable. Moreover, Plaintiff does not suggest what partial relief alternatively

would be equitably appropriate and why. Furthermore, Plaintiff's legal framework, if true, would place an evidentiary burden on Defendant to disprove a front pay claim even before such has been reasonably supported with some evidence by Plaintiff.

As this court previously cited to the parties as persuasive authority, *Barbour v. Merrill*, 48 F.3d 1270 (D.C. Cir. 1995), details what a plaintiff must do to properly support a request for front pay:

> As with back pay, the purpose of front pay is "to make a victim of discrimination 'whole' and to restore him or her to the economic position he or she would have occupied but for the unlawful conduct of his or her employer." *Green v. USX*, 843 F.2d at 1531 (internal quotation marks and punctuation omitted); *see, e.g., Pitre*, 843 F.2d at 1279. <u>The plaintiff bears the initial burden of providing the district court "with the essential data necessary to calculate a reasonably certain front pay award," including "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate</u>." *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992), *cert. denied*, 507 U.S. 915, 113 S. Ct. 1270, 122 L. Ed. 2d 665 (1993); *see Fleming*, 898 F.2d at 560. The defendant remains free to challenge the award's amount, length, or interest rate, or to establish as an affirmative defense that the plaintiff failed to mitigate damages. *See Fleming*, 898 F.2d at 560.

*Barbour*, 48 F.3d at 1279-80 (emphasis added).[5] Here, Plaintiff has failed in his *prima facie* burden of providing "essential data" establishing "the length of time [he]

---

[5] The court notes that *Green v. USX Corp.*, 843 F.2d 1511 (3d Cir. 1988), was subsequently vacated on *certiorari* for further consideration in light of *Wards Cove Packing Company, Inc. v. Atonio*, 490 U.S. 642 (1989) by *USX Corp. v. Green*, 490 U.S. 1103 (1989), and then the prior opinion was reinstated in part and modified in part on remand by *Green v. USX Corp.*, 896 F.2d 801 (1990).

expects to work for the defendant."

For example, in his Motion to Amend, Plaintiff maintains particularly that the conclusion that he would work for Defendant for the rest of his working life is supported by:

> [T]he testimony of the importance to the Plaintiff of health insurance coverage provided by the employment he was denied and the fact that when he left the employment of the Defendant voluntarily in 2001 he was afforded health insurance coverage through his wife's employment, that his wife's said employment was thereafter terminated and the health insurance coverage for Plaintiff and his family was lost, and that the health insurance coverage he was able to obtain thereafter was found to be unaffordable and that employment by the Defendant was the only feasible means Plaintiff had to obtain health insurance coverage for himself and his family.

(Doc. 59 at 8-9). The undersigned has studied her notes taken during the trial and has reviewed trial exhibits as well as testimony, a rough draft transcript of the trial, and has listened to the audio recording of Plaintiff's trial testimony, and finds several evidentiary holes with respect to Plaintiff's counsel's above summary.[6]

More specifically, Plaintiff's wife's employment with insurance coverage benefits at IC Transportation was terminated as a result of her <u>voluntary</u> resignation from there in 2002 so that she could take care of and home school her children. Prior

---

[6] The court also notes that, post-verdict, Plaintiff's trial counsel withdrew from the case and that Plaintiff's current counsel, who has filed the pending Motion to Alter, was not present at trial.

9

to the time of that choice, Plaintiff had already <u>voluntarily</u> ended his job (with benefits) with Defendant in 2001 in order to more fully pursue his insurance sales business as an independent agent for Aflac and had gone on his wife's health insurance policy. For a 2-3 year period after Plaintiff's wife had resigned from her full-time job, Plaintiff obtained health insurance coverage by means of a non-employer source, which coverage he ended sometime in 2004 or 2005.

The voluntariness of these employment/family decisions bring into question the purported importance that Plaintiff has placed (through his counsel's argument) on having a job with medical insurance coverage and has cast serious doubt upon Plaintiff's reliance upon this fringe benefit as a purported basis for projecting front pay for a 15 year period, <u>especially in the context of a record devoid of any evidence establishing Plaintiff's intent with respect to his future employment</u>. *Cf. Tyler v. Shelby County, Tex.*, 47 F.2d 103, 105 (5th Cir. 1931) ("<u>In the absence of such evidence, it is not to be inferred or assumed</u> that that valuation in that year [*i.e.*, 1925] was such as to require levies aggregating 20 cents on the $100 to provide the funds called for by the above-mentioned orders made in 1923.") (emphasis added) (citations omitted); *id.* ("In our opinion, <u>the evidence failed to show</u> that that limit was exceeded. <u>It follows that the ruling now under consideration was erroneous</u>.")

(emphasis added).[7] Not only did Plaintiff never testify that continuing in a job with Defendant was important to him because of health insurance coverage, his and his wife's work history, about which he did testify, show significant gaps in coverage created by their personal choices pertaining to work and family.

Moreover, the record does not provide any evidence regarding Plaintiff's wife's current employment status, *i.e.*, from 2009 to the present, and/or establish how long she will continue to home school her kids.[8] Relatedly, there was no evidence adduced at trial or post-trial that employment with Defendant was Plaintiff's <u>only</u> feasible means to obtain affordable health insurance coverage (*e.g.*, no evidence about whether Plaintiff's wife could possibly return to her former employment or find another job with health insurance benefits). Similarly, there was no evidence confirming that Plaintiff "was ready, willing, and able to fill the position [with Defendant]" <u>as of 2009 and going forward</u>. (Doc. 59 at 6).

Moreover, the Eleventh Circuit cases cited by Plaintiff do not establish, as he

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[8] Plaintiff's trial testimony established that he has three children, that his oldest daughter was 22 years of age in October of 2009, and that his twins would be 11 in December of 2009. The court observes that, consistent with Plaintiff's twins' growing up, educating them by way of home schooling will not take fifteen more years.

contends, that in this circuit "an award of front pay . . . [does not require] evidence such as that cited in the April 7, 2010 order (e.g., intent to remain in position for 15 years, data necessary to calculate a 'reasonably certain' front pay award, etc." (Doc. 59 at 10). In fact, one of the cases cited by Plaintiff, *Muñoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340 (11th Cir. 2000), actually supports this court's evaluation of the inadequate evidence provided by Plaintiff as to the length of front pay.

As the Eleventh Circuit explained in *Muñoz*:

> The Resort contends that the front pay award was inappropriate because of its speculative nature. It points out that the only assurance the district court received that Muñoz would have continued in his position had he not been terminated was Muñoz's own testimony, in which he stated an intent to remain employed until the age of seventy. Muñoz's intent, the Resort argues, was an insufficient basis for awarding front pay. As we have observed, however, "awarding prospective relief involves some risk of uncertainty, but that in itself does not preclude an award of such relief. [After all, d]istrict courts have had considerable experience with damages for future wages" in other contexts. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir.1988) (internal quotation omitted). Moreover, when age discrimination plaintiffs are near the age of retirement, this court has signaled its comfort with awarding front pay. In *Lewis v. Federal Prison Industries, Inc.*, 953 F.2d 1277, 1280 (11th Cir. 1992), this court cited with approval *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 376 (3d Cir. 1987), in which the Third Circuit held that awarding front pay to plaintiffs within eight years of normal retirement age did not require unreasonable speculation. At the time of his termination, Muñoz, after being employed by the Resort for twenty-seven years, was within six years of retirement; at the close of trial, he was but one year away. We conclude that under these circumstances, awarding Muñoz one year's worth of front pay was not an abuse of the district court's discretion.

*Muñoz*, 223 F.3d at 1349 (emphasis added) (footnote omitted).

Thus, in *Muñoz*, part of the Eleventh Circuit's explicit reasoning for upholding the one year of front pay awarded was <u>the plaintiff's testimony that he intended to work until he retired</u>. Here, there is no such testimony from Plaintiff at trial or post-verdict by way of an evidentiary hearing[9] or in the form of an affidavit or declaration that expresses a desire to be employed until retirement or provides comparable testimony upon which a reasonable estimate of an appropriate duration of front pay can be based.[10]

---

[9] As this court has previously recognized, despite the entry of this court's post-trial conference and scheduling order (Doc. 52) on January 15, 2010, "<u>neither side has offered any evidentiary citations</u> regarding the testimony and documents introduced at trial that relate to the remaining post-trial issues, <u>including front pay, or requested a post-trial evidentiary hearing</u>." (Doc. 58 at 13 (emphasis added)).

[10] The court is puzzled by Plaintiff's unsupported contention that "[w]hether in an affidavit or in testimony any such statement by Plaintiff that he intends to stay until his retirement age which is approximately 15 years would likely be viewed as self-serving and speculative, even though that is his intent." (Doc. 59 at 9). *Muñoz* is directly at odds with Plaintiff's position that <u>sworn evidence</u> from him about his intended length of employment (as opposed to argument from his counsel) is unnecessary "because it would likely be viewed as self-serving and speculative." (Doc. 59 at 22); *see also Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence."). The court is similarly perplexed by Plaintiff's apparent aversion to swearing under oath about his intent to remain employed, especially in light of *Muñoz*'s approval of that exact type of evidence to reasonably sustain a front pay award under the ADEA, and this court's conclusion that an award of front pay would be appropriate in this case <u>but for the lack of evidence establishing a reasonably appropriate beginning or ending date</u>. Plaintiff has had at least three opportunities (*i.e.*, at trial, before the entry of the April

Moreover, *Muñoz* is an ADEA decision, and expressly indicates that when <u>age discrimination</u> plaintiffs are approaching retirement, the Eleventh Circuit "has signaled its comfort with awarding front pay." Here, not only is Plaintiff proceeding under Title VII (which discrimination statute *Muñoz* is silent about), but also he is approximately 15 years away from retirement, as opposed to Muñoz's one year from — and therefore "approaching" — retirement status.

The other opinion cited by Plaintiff, *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550 (11th Cir. 1988), is also an ADEA case. In *Castle*, following First Circuit precedent, "the [district] court refused to grant any additional monetary damages such as front pay to appellants" on the basis that "its awards of liquidated damages as well as the back pay awards provided sufficient relief to appellants." 837 F.2d at 1562. The Eleventh Circuit held that "[a] district court may not factor in the liquidated

---

7, 2010 order, and subsequent to the April 7, 2010 order) to present this court with sworn testimony regarding his intent. Indeed, in its order entered on January 15, 2010 (Doc. 52), the court expressly invited either party to tell it whether that party "[sought] to have the court receive additional evidence" and stated that if a party so sought, "that party shall make a detailed proffer of such evidence and shall advise the court as to the manner in which he or it seeks to present such evidence (i.e., by stipulation of the parties, <u>by affidavit</u>, or by sworn testimony at a post-trial evidentiary hearing, assuming the court determines that such a hearing is appropriate." (Doc. 52 at 3 (emphasis added); *see also* Doc. 58 at 13 (quoting Doc. 52 at 2-3)). In light of this history of unheeded orders, this court has questions about whether Plaintiff's repeated failure to proffer such proof is an indication that such evidence, if adduced, would not be helpful to Plaintiff's position.

14

damages award when considering equitable relief because liquidated damages are punitive in nature." *Id.* (citation omitted).

Regarding the speculative nature of front pay damages, the Eleventh Circuit also clarified in *Castle*:

> The district court also implied that front pay damages, being prospective, were much too speculative to be calculated. *Castle v. Sangamo Weston, Inc.*, 650 F. Supp. at 257-61. <u>Admittedly, awarding prospective relief involves some risk of uncertainty, but that in itself does not preclude an award of such relief</u>. "District courts have had considerable experience with damages for future wages in employment contract and personal injury cases, . . . as well as front pay cases under Title VII." *Whittlesey*, 742 F.2d at 728 (citations omitted). The duty to mitigate damages by seeking employment elsewhere will, of course, limit the amount of front pay available. *See id.*

*Castle*, 837 F.2d at 1562 (emphasis added).

Thus, *Castle* stands primarily for the proposition that an award of front pay under the ADEA cannot be denied on the basis that liquidated damages have been awarded. Secondarily, *Castle* indicates that completely denying front pay <u>solely</u> on the grounds that awarding front pay involves uncertainty is an abuse of discretion.

Nowhere does *Castle* review the elements of a front pay calculation. Moreover, *Castle* does not contemplate the type of evidence that is appropriate to reasonably support a front pay calculation. Furthermore, unlike *Castle*, the court's decision to deny Plaintiff front pay here is not based purely upon the speculative

nature of such an award; instead it is premised upon Plaintiff's failure to provide <u>some evidence</u> that would reasonably support the duration of a front pay calculation for 15 years or, indeed, any period of time.

Additionally, the denial is based upon the failure of Plaintiff to cite to any comparable case authority that would support an award of front pay despite the lack of an adequate evidentiary basis (*e.g.*, no evidence of Plaintiff's intent to continue working for Defendant until retirement, especially in light of Plaintiff's prior decision to quit his job with Defendant and rely initially on his wife's employer-provided health insurance and later on privately purchased health insurance) to equitably fashion an appropriate (as opposed to an arbitrarily contrived) beginning or ending point. As a result, *Castle* does not cause this court to change its decision on front pay. *Cf. U.S. v. Grant*, 211 Fed. Appx. 889, 897(11th Cir. 2006) ("Rather than adopting any of these figures, the court settled, somewhat inexplicably [and also admitting that it 'may sound arbitrary'], on a total loss amount of $50,000.");*id.* ("Not only was the record devoid of any such basis for arriving at that figure as the loss, but the court failed to state any 'findings establishing the factual basis for its Guidelines calculations.'") (citing *U.S. v. Hamaker*,455 F.3d 1316, 1338 (11th Cir. 2006) (recognizing that "while the district court, as the fact finder at sentencing, retains broad discretion in calculating loss," the court must nevertheless "make *independent*

[factual] findings" in support of "proper loss calculation for sentencing purposes")).[11]

Therefore, consistent with the above discussion, the court will not amend its prior order entered on April 7, 2010, and will further enter final judgment in the total amount of $191,387.30 for lost wages ($132,240.78), pre-judgment interest ($9,146.52), and pain and suffering ($50,000.00) combined as proposed by Plaintiff.

## III.  Plaintiff's Fee Motion

On April 20, 2010, Plaintiff filed a Motion for Attorney's Fees and Expenses (Doc. 60) (the "Fee Motion"). In the Fee Motion, Plaintiff seeks to recover $65,732.75 in attorney's fees and $2,557.44 in costs. (*Id.* at 1).

On April 27, 2010, counsel for Defendant sent an email to chambers indicating that Defendant had "no meritorious objections or grounds to dispute the plaintiff's attorney fee petition (fees and costs)" and therefore, would not be "fil[ing] anything in opposition" to the Fee Motion. *See* Attachment # 2. Accordingly, Plaintiff's Fee Motion is **GRANTED** as unopposed, and the court will award Plaintiff $65,732.75 in attorney's fees and $2,557.44 in costs ($68,290.19 combined) as requested.

---

[11] The court is cognizant of the fact that the *Grant* opinion arises in the criminal sentencing context. However, in the absence of an Eleventh Circuit decision directly on point, the court finds that *Grant*'s requirement that, despite the discretionary nature of the decision, even a court's loss calculation must have some evidentiary-based underpinnings (rather than being arbitrarily reached) to be persuasively applicable when assessing how to reasonably calculate a claim for front pay in civil cases.

## IV. Conclusion

Plaintiff's Motion to Amend is **DENIED**, and Plaintiff's Fee Motion is **GRANTED**. The court will separately enter final judgment.

**DONE** and **ORDERED** this the 28th day of April, 2010.

　　　　　　　　　　　　　　　　　　　／s／ Virginia Emerson Hopkins
　　　　　　　　　　　　　　　　　　　**VIRGINIA EMERSON HOPKINS**
　　　　　　　　　　　　　　　　　　　United States District Judge